UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STREET SPIRIT IP LLC,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EHARMONY, INC.,<br><br>　　　　Defendant. | Case No. 2:23-cv-02252-MCS-JPR<br><br>**ORDER GRANTING MOTION TO DISMISS (ECF NO. 22)** |

Defendant eHarmony, Inc. moves to dismiss the complaint of Plaintiff Street Spirit IP LLC. (Notice of Mot., ECF No. 22; Mot., ECF No. 22-1.) Plaintiff opposes the motion, and Defendant filed a reply. (Opp'n, ECF No. 26; Reply, ECF No. 27.) The Court heard argument on August 7, 2023. (Mins., ECF No. 31.)

**I.   BACKGROUND**

According to the complaint, Plaintiff owns by assignment U.S. Patent No. 8,850,535 (the "'535 Patent"), which "relates to a novel and improved identity verification and management [method] for a social network system." (Compl. ¶¶ 7–8, ECF No. 1.) The '535 Patent is titled, "Methods and Systems for Identity Verification

1

in a Social Network Using Ratings." (Compl. Ex. A, at 1, ECF No. 1-1 ('535 Patent).)[1] The patent purports to simplify and enhance identity management through a method of "identifying individuals, identifying users accessing one or more services over a network, determining member identity ratings, and based on member identity ratings that restrict access to network-based content and certain user-to-user interactions." (*Id.*) Plaintiff alleges that "Defendant maintains, operates, and administers systems, products, and services for enabling a method of providing customer relationship management for a network that infringes one or more claims of the '535 patent." (Compl. ¶ 9.)

To support its claim of patent infringement, Plaintiff proffers a claim chart describing the manner in which Defendant's profile-building questionnaire violates each element of Claim 44. (Compl. Ex. B, ECF No. 1-2 (claim chart).) Claim 44 reads:

> A method of providing customer relationship management for a network, the method comprising:
> 
> creating member account profiles for members using identification components for identifying members;
> 
> generating an identity rating for each member using initial rating factors including: a number of identification components and a quality of identification components;
> 
> determining member identity rating thresholds for identity rating-restricted content access;
> 
> authenticating a member attempting to access the network;
> 
> managing the member's identity rating in real-time, wherein the member's identity rating is alterable in real-time

---

[1] Pinpoint citations of exhibit A to the complaint refer to the page numbers generated in the CM/ECF header.

>>by monitoring member identity rating-altering factors including keystroke patterns and language analysis;
>>
>>and
>>
>>providing content access to a member based on the managed identity ratings.

(Compl. Ex. A, at 66.) Plaintiff provides no other specific allegations explaining its theory of infringement of the '535 Patent. (*See generally* Compl.)

## II.  LEGAL STANDARD

In patent infringement actions, an accused infringer may move to dismiss under 35 U.S.C. § 101 on the basis that the claimed invention is ineligible for patent protection and that the patent is thus invalid. In this context, the moving party "bear[s] the burden of establishing that the claims are patent-ineligible under § 101." *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *8 (C.D. Cal. Mar. 17, 2015). "[I]n applying § 101 jurisprudence at the pleading stage, the Court construes the patent claims in a manner most favorable to Plaintiff." *Id.* (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)). Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Nevertheless, eligibility under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Concurrently Filed Answer and Motion

As a preliminary matter, the Court addresses Defendant's decision to file its answer concurrent with its Rule 12(b)(6) motion. While Defendant technically filed a timely motion, Fed. R. Civ. P. 12(b); (*see* Mot. (docket entry 22); Ans., ECF No. 23), Plaintiff argued at the hearing that Defendant's later-filed answer mooted the motion to dismiss. The filing of an answer, however, does not moot a motion under Rule 12(b), as a defendant need not "wait to answer until the court had ruled on the motion." *Brunig v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009) (rejecting argument that filing an answer mooted a pending Rule 12(b) motion); *accord Kobayashi v. McMullin*, No. 2:19-cv-06591-DOC (MAA), 2022 WL 3137958, at *10 (C.D. Cal. May 31, 2022), *R. & R. adopted in relevant part*, 2022 WL 3226169 (C.D. Cal. Aug. 8, 2022). Accordingly, the Court considers Defendant's motion under the standards of Rule 12(b)(6).[2]

///

---

[2] The Court would reach the same result either way, as the parties agree that the Court may convert Defendant's motion to one under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(B); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (stating that motions under Rule 12(b) or (c) are "functionally identical").

### B. Analytical Framework of § 101

Under 35 U.S.C. § 101, Congress granted broad patent eligibility to inventions or discoveries including "processes, machines, manufactures, and compositions of matter." *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010). These broad categories notwithstanding, the Supreme Court has carved out three exceptions to patent eligibility under § 101: "laws of nature, physical phenomena, and abstract ideas." *Id.* (internal quotation marks omitted) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). The last exception, abstract ideas, is relevant here.

"[A]n invention is not rendered ineligible for [a] patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (cleaned up); *see also id.* (requiring courts to "distinguish patents that claim the building blocks of human ingenuity" from those that "integrate the building blocks into something more" (cleaned up)). In *Alice*, the Supreme Court set forth a two-step framework for determining patent eligibility under § 101. A claim is ineligible under § 101 if "(1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotation marks omitted).

Under step one, "courts may ask whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery.'" *Nagravision SA v. NFL Enters., LLC*, No. CV 17-03919-AB (SKx), 2018 WL 1807285, at *3 (C.D. Cal. Mar. 9, 2018) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). In the software context, this step "often turns on whether the claims focus on specific asserted improvements in computer capabilities or

instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (internal quotation marks omitted).

If the claims fail step one, under step two, "the court must search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Timeplay, Inc. v. Audience Ent. LLC*, No. CV 15-05202 SJO (JCx), 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015) (cleaned up). This step is satisfied when the claim limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Content Extraction*, 776 F.3d at 1347–48 (cleaned up). "Whether the claim elements or the claimed combination are well-understood, routine, [or] conventional is a question of fact." *Aatrix Software*, 882 F.3d at 1128.

### C. Applying *Alice* to the '535 Patent

#### 1. Claim 44 as Representative of the Other Claims

Before applying *Alice*, the Court addresses Defendant's contention that Claim 44 "is representative of the other independent claims (1, 37, and 43), as well as the dependent claims." (Mot. 15.) In its complaint, Plaintiff provides specific allegations of infringement only as to Claim 44. (*See generally* Compl.; Compl. Ex. B.) According to Defendant, "[t]he other independent claims barely differ" from Claim 44, as any additional requirements or limitations are insufficient to render Claim 44 non-representative. (Mot. at 11.) As to Claims 2–36 and 38–42, which all depend on Claims 1 and 37, Defendant argues that the dependent claims simply "specify minor aspects of the claimed method." (*Id.*)

Without elaboration, Plaintiff counters that "Claim 44 is not representative of all claims as there are multiple independent claims each including relevant features that are not shared in all independent claims." (Opp'n 2 n.4.) When pressed at the hearing, Plaintiff again failed to explain in any detail how the additional limitations and

requirements of the other dependent and independent claims are sufficiently distinctive from Claim 44, arguing simply that the other claims offer material not present in Claim 44. Given the lack of any meaningful argument, Plaintiff "ha[s] forfeited its ability to argue that other claims are separately patent eligible." *British Telecomms. PLC v. IAC/InterActiveCorp.*, 813 F. App'x 584, 588 (Fed. Cir. 2020). The Court will thus consider the merits of Defendant's § 101 motion, proceeding with Claim 44 as representative of the other claims in the '535 Patent.

### 2. *Alice* Step One

*Alice* step one requires courts to "look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (internal quotation marks omitted). The Federal Circuit has cautioned that "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016).

At step one, Defendant argues that the '535 Patent is ineligible because its claims "simply recite[] the idea of controlling access to, or limiting permission to, resources," which the Federal Circuit has repeatedly held to be an abstract idea. (Mot. 16 (collecting cases).) And where certain claim limitations "narrow the abstract ideas, 'a claim is not patent eligible merely because it applies the abstract idea in a narrow way.'" (*Id.* at 17 (quoting *In re Abel*, 838 F. App'x 558, 561 (Fed. Cir. 2021)).) Any narrowing limitations "fail to solve any technical problem or point to a specific improvement in computers[,] . . . make mere generic functional recitations, and lack the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." (*Id.* (cleaned up).) According to Defendant, a method that seeks to control access to resources "is exactly the sort of process that can be performed in the human mind, or by a human using a pen and paper." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020); (*see* Mot. 18 (quoting *id.*)).

7

Plaintiff argues that Defendant's formulation of the '535 Patent "is an oversimplification and focuses on claim elements rather than the claim as a whole" and that describing "the claims at such a high level of abstraction and untethered from the language of the claims . . . all but ensures that the exceptions to § 101 swallow the rule." (Opp'n 13 (internal quotation marks omitted) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).) To Plaintiff, the '535 Patent "provides a novel method for authenticating a member attempting to access a secured network, updating in real-time," which is "inextricably tied to computer technology." (*Id.* at 14–15.) At the hearing, Plaintiff explained that a human is incapable of analyzing, reviewing, and comparing user-inputted data with its own catalog of information in real time, which renders the pen-and-paper analogy inapposite. Additionally, Plaintiff maintains that the claims provide "a technological improvement . . . configured to providing security against Internet-centric crimes." (*Id.* at 17.)

The Court finds that the claimed invention is an abstract idea for two reasons. First, that a claimed method is "inextricably tied to computer technology" is of little import. (*Id.* at 15.) The claims in the '535 Patent outline methods for processing and verifying user data and thereafter providing access to other users' information, (Compl. Ex. A, at 64–66), which are "generalized steps to be performed on a computer using conventional computer activity," ineligible as patentable subject matter, *Affinity Labs*, 838 F.3d at 1260 (internal quotation marks omitted). Simply "analyzing information by steps people [could] go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category." *Elec. Power Grp.*, 830 F.3d at 1354 (collecting cases). And "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.*

Second, the Court finds no cognizable technological improvement in the '535 Patent. As to the added element of real-time data processing, courts have roundly

rejected the argument Plaintiff now raises. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097–98 (Fed. Cir. 2016). Indeed, just because a human is unable to process this data instantaneously does not render the pen-and-paper analogy any less salient. A human, given sufficient time, could process the same data using a similar rubric for confirming a user's identity, building a user profile, editing a user's records, and blocking or restricting access to other users' information. And as to the purported technological improvements addressing cybercrime, "this is a *result* rather than a specific, technological solution to a specific, technological problem," which, without more, "is not enough to confer eligibility to an otherwise abstract idea." *Street Spirit IP LLC v. Meta Platforms, Inc.*, Nos. C 23-00879 WHA, C 23-00883 WHA, 2023 WL 4869594, at *6 (N.D. Cal. July 31, 2023) (internal quotation marks omitted) (quoting *Koniklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019)). Plaintiff fails to identify any "specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (internal quotation marks omitted); *see also Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1296 (Fed. Cir. 2020) ("To avoid ineligibility, a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it." (cleaned up)).

Based on the above, the '535 Patent's claims are directed to an abstract idea, requiring the Court to proceed to the second *Alice* step.

### 3. *Alice* Step Two

*Alice* step two asks "whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (cleaned up). "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d

1341, 1349 (Fed. Cir. 2016). But "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

At step two, Defendant first attacks the sufficiency of Plaintiff's complaint, arguing that the sole paragraph directed at inventiveness only "alleges in conclusory fashion that '[t]he '535 patent relates to a novel and improved identity verification and management [method] for a social network system.'" (Mot. 19 (quoting Compl. ¶ 8).) Defendant further argues that the '535 Patent merely recites generic computer components and functions and methods of collecting and analyzing data, none of which describe an inventive concept. (*Id.* at 19–20.) According to Defendant, invocation of generic computer parts, even if performing or automating the abstract ideas in the '535 Patent, is "not even arguably inventive." (*Id.* at 20 (internal quotation marks omitted) (quoting *SAP*, 898 F.3d at 1170).)

Plaintiff offers several defenses in opposition. First, Plaintiff asserts it is entitled to a presumption of validity under 35 U.S.C. § 282. (Opp'n 17.) Plaintiff points to its notice of allowance, (*id.*), where the examiner found novelty in Claims 1, 37, 43, and 44 in view of the prior art, ('535 Patent File History 24, ECF No. 29-1).[3] While not explicit in its argument, Plaintiff appears to contend that real-time data processing, including managing and altering identity ratings through keystroke analysis, is the inventive concept. (Opp'n 17.) Next and somewhat relatedly, Plaintiff argues that "[t]he primary improvement over the prior art mentioned . . . is . . . the use of [an] identification-secured network that is configured to provide security against Internet-centric crimes." (*Id.* at 18.) In sum, Plaintiff equates novelty found at the patent filing

---

[3] Pinpoint citations of the '535 Patent file history refer to the page numbers generated in the CM/ECF header. The Court reviews this document in connection with this motion as a judicially noticeable public record not subject to reasonable dispute. *U.S. Rubber Recycling, Inc. v ECORE Int'l*, No. CV 09-09516 SJO (OPx), 2011 WL 13127548, at *2 (C.D. Cal. July 8, 2011) (collecting authorities).

stage as dispositive of inventiveness for purposes of § 101.

The Court finds no inventive concept in the '535 Patent rendering its abstract ideas patentable subject matter. For one, Plaintiff's six-page complaint, on its face, is devoid of any plausible, non-conclusory allegations sufficient to survive § 101 analysis at the pleading stage. (*See generally* Compl.); *Aatrix Software*, 882 F.3d at 1126–27. Further, Plaintiff does not meaningfully address the '535 Patent's recitations of generic computer components (e.g., "network," "processors," "server," "devices," and "services") and functions (e.g., inputting and gathering data and restricting or allowing access). (Compl. Ex. A, at 64–66; Opp'n 17–19.) While "inventions which are directed to improvements in the functioning and operation of the computer are patent eligible" even when the claims recite generic computer components, *Aatrix Software*, 882 F.3d at 1127, § 102 novelty is distinct from § 101 eligibility, *Synopsys*, 839 F.3d at 1151 ("[A] claim for a *new* abstract idea is still an abstract idea."). Notwithstanding, Plaintiff's averments of inventiveness are unavailing. As discussed above, instantaneity and claimed improvements addressing cybercrime, without more, are insufficient to confer eligibility on an abstract idea. *See Two-Way Media Ltd.*, 874 F.3d at 1340; *FairWarning*, 839 F.3d at 1097–98; *Koniklijke*, 942 F.3d at 1150.

However, Plaintiff does argue—albeit in a separate section—that the '535 Patent offers sufficient detail in its ordered combination to be concrete, and proceeds to recite the 40 diagrams and flowcharts applying the claimed invention in various technical settings. (Opp'n 10–12.) Plaintiff offers no further analysis or explanation, leaving the Court only to guess how this painstaking recitation of the technical applications of the claimed invention "transforms an abstract idea into a patent-eligible application." *Meta*, 2023 WL 4869594, at *5. Indeed, The '535 Patent's claim limitations and ordered combination only describe specific steps for carrying out an abstract idea, which fails to reveal any inventive concept that would otherwise qualify as patent-eligible subject matter. *See Affinity Labs*, 838 F.3d at 1262; *Bascom*, 827 F.3d at 1349; *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear

since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

In sum, the '535 Patent fails the *Alice* test and thus claims ineligible subject matter. Because Defendant's motion is granted on this basis, the Court need not address the remainder of the motion.

### D. Leave to Amend

Plaintiff "requests an opportunity to file an amended complaint to correct any identified pleading issues." (Opp'n 23.) However, amendment would be futile because none of the arguments advanced raise any fact disputes saving the '535 Patent from § 101 ineligibility at the pleading stage. *Berkheimer*, 881 F.3d at 1368; *Voip-Pal.com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1145 (N.D. Cal. 2019), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020). Further, both in its pleadings and at the hearing, Plaintiff failed to offer any additional allegations that might preclude resolving eligibility at this stage. Accordingly, the Court denies leave to amend.

## IV. CONCLUSION

The Court grants Defendant's motion to dismiss with prejudice and finds that the '535 Patent is ineligible under 35 U.S.C. § 101. Plaintiff's claim of patent infringement is dismissed without leave to amend. The Court directs the Clerk to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: August 23, 2023

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE